UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                  :

**RUAS DE LEMOS**,

                          Plaintiff,              **MEMORANDUM DECISION AND ORDER**

           – against –                        24-CV-8285 (AMD) (CHK)

**ALLIANCE GROUND INTERNATIONAL, LLC**,

                          Defendant.
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

       The plaintiff brings this action against his former employer, Alliance Ground International, LLC ("AGI"), alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").[1] The plaintiff alleges that the defendant did not pay him overtime wages, did not reimburse him for expenses incurred during work — including cellphone and internet expenses — and did not provide him with wage statements or wage notices. (ECF No. 1 ¶¶ 18–25.)

       Before the Court is the defendant's motion to compel arbitration and motion for sanctions. As explained below, the Court grants the motion to compel arbitration and denies the motion for sanctions.

---

[1] AGI is now known as AGI Cargo, LLC. *See* ECF No. 24-1 at 1.

## BACKGROUND

**I.      Factual Background**[2]

The defendant provides airline cargo handling services at various airports, including JFK. (ECF No. 24-2, Declaration of Jay Tweeddale ("First Tweeddale Decl.") ¶ 3.)  The defendant employed the plaintiff as a Terminal Manager from January 2022 to November 2024.  (ECF No. 24-1 at 6; ECF No. 1 ¶ 15.)  The plaintiff was responsible for overseeing AGI's operations at Building 22, an 82,000 square foot cargo handling facility at JFK.  (First Tweeddale Decl. ¶¶ 5, 7.)[3]  During the plaintiff's employment, AGI had contracts with Turkish Airlines and Cargolux, which is based in Luxembourg.  (ECF No. 28-1, Declaration of Sidney Ruas de Lemos ("Pl. Decl.") ¶ 7.)  As discussed in greater detail below, the parties disagree about the plaintiff's job duties.  They agree, however, that the plaintiff was required to supervise the cargo facility,

---

[2] The facts are drawn from the complaint, the parties' briefs, and the exhibits appended to the briefs.  *See Faggiano v. CVS Pharmacy, Inc.*, 283 F. Supp. 3d 33, 34 n.1 (E.D.N.Y. 2017) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration." (quoting *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-CV-839, 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006))).

[3] The plaintiff argues that the Court should deny the motion to compel arbitration because the "purported witnesses put forth by the Defendant[] lack the required personal and actual knowledge," and they "do not appear to have been directly involved in Plaintiff's hiring and employment, do not seem to have a technical background as to electronic matters/evidence, seem[] to be echoing legalistic positions taken by the defense as opposed to stating actual facts, and ha[ve] not provided supporting screenshots or manuals etc." (ECF No. 28 at 24.)  This is not persuasive.  Jay Tweeddale states that he is currently the Regional Vice President of Cargo for AGI, a position that he has held since August 2022.  (First Tweeddale Decl. ¶ 2.)  In that role, he is "familiar with AGI's operations, including employees' job duties."  (*Id.*)  He says that he "had direct and regular interaction with [the plaintiff] from the time that [he] commenced employment with AGI in August 2022, through [the plaintiff's] separation from the company . . . [and] estimate[s] that at a minimum, [he] directly interacted with [the plaintiff] three days per workweek, though [their] interactions could occur as regularly as multiple times per day, every day of the workweek."  (ECF No. 29-1 ("Second Tweeddale Decl.") ¶ 3.)  In addition, he says that he was at the building where the plaintiff worked for about two weeks a month for approximately two years.  (*Id.* ¶ 4.)  This is sufficient to establish Mr. Tweeddale's familiarity with the plaintiff's job duties.

including by overseeing operations, implementing the defendant's contracts with international airlines, and directing the employees who processed the cargo. (*See* First Tweeddale Decl. ¶¶ 11, 13, 15, 16; ECF No. 28 at 8.)

As a condition of his employment, the defendant required the plaintiff to sign an "Arbitration Agreement and Waiver of Class and Collective Actions." (ECF No. 24-4, Declaration of Brandy Frazier ("Frazier Decl.") ¶ 4.)[4] The Arbitration Agreement contained the following provision:

> In exchange for Employee's initial or continued employment with Employer, the Parties hereto agree that any dispute between Employee and Employer or any Employer Entities ("Dispute") that is not resolved to Employee's satisfaction pursuant to Employer's policy or procedure regarding the resolution of disputes shall be submitted to final and binding arbitration administered by the American Arbitration Association ("AAA") pursuant to its Employment Arbitration Rules and Mediation Procedures (the "Rules"). The term "Dispute" includes, but is not limited to, any claim, controversy, or dispute arising out of or related to the Employee's employment or termination of employment with the Employer or with any Employer Entities including, but not limited to, under the Age Discrimination in Employment Act of 1967, Americans with Disabilities Act of 1990, Equal Pay Act of 1963, Executive Order 11246, Fair Labor Standards Act, Family and Medical Leave Act, Older Worker Benefit Protection Act of 1990, Title VII of the Civil Rights Act of 1964, Section 1981 through 1988 of Title 42 of the United States Code, Private Attorneys General Act of 2004 ("PAGA"), and/or any other federal, state, or local law, common law, statute, ordinance or regulation, public policy or contract. A Dispute also includes, but is not limited to, any claim made for any tort, breach of contract, defamation, unpaid wages, wrongful termination, discrimination (including harassment), retaliation, whistleblowing and/or damages of any kind, and any claim for costs, fees, or other expenses or relief, including attorney's fees, arising between the Parties or

---

[4] The Court also rejects the plaintiff's challenge to Brandy Frazier's declaration. (*See* ECF No. 28 at 24.) According to her declaration, Ms. Frazier is "Chief People Officer" for AGI and has held that position since July 2022. (Frazier Decl. ¶ 2.) She is "familiar with AGI's operations, including the Arbitration Agreement and Waiver of Class and Collective Actions (the 'Arbitration Agreement') that employees are required to sign as a condition of their employment with AGI." (*Id.* ¶ 2.) The declaration establishes Ms. Frazier is familiar with and has access to AGI's records, and thus has sufficient personal knowledge that the plaintiff received and signed the Arbitration Agreement, and received and acknowledged the Employee Handbook. The plaintiff's claim that the defendant did not "provide[] supporting screenshots or manuals etc," (ECF No. 28 at 24), is meritless. The defendant included the Arbitration Agreement and the relevant portion of the Employee Handbook as exhibits to its motion to compel. (*See* ECF No. 24-3; Frazier Decl. at 13–16.)

3

> between Employee and any of the Employer Entities that the Parties would have been otherwise entitled to file or pursue in court or with any administrative agency, unless prohibited by law.

(ECF No. 24-3 at 2.)

The agreement also provided that "[t]his Agreement and any resulting arbitration award are enforceable under and subject to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ('FAA'), or, where the FAA does not apply, pursuant to the laws of the state where the Employee performed work for Employer." (*Id.* at 3–4.) The plaintiff signed the Arbitration Agreement on December 29, 2021. (Frazier Decl. ¶ 5.) He signed it again on May 15, 2024 as a condition of his continued employment. (Frazier Decl. ¶ 6; ECF No. 24-3 at 7.)

The plaintiff also had access to AGI's Employee Handbook, which was available electronically and described the nature of arbitration and the scope of claims that must be arbitrated. (*See* Frazier Decl. ¶¶ 9, 14–15.) The plaintiff electronically acknowledged that he reviewed the Employee Handbook on December 29, 2021. (*See id.* at 16.) The plaintiff maintains that he "never believed or understood that [he] was entering or creating an arbitration contract with the company." (Pl. Decl. ¶ 4.)

## II.  Procedural History

The plaintiff brought this action on November 30, 2024. (ECF No. 1.) On February 12, 2025, the defendant moved to compel arbitration. (ECF No. 13.) The Court construed the motion as a motion for a pre-motion conference and held a pre-motion conference on April 17, 2025. (*See ECF Order dated Feb. 27, 2025*; *ECF Order dated Mar. 10, 2025*; *ECF Minute Entry dated Apr. 17, 2025*.) At the pre-motion conference, the Court directed the parties to engage in limited discovery to help the Court determine whether the plaintiff was a transportation worker whose contract is exempt under Section 1 of the Federal Arbitration Act ("FAA"), and to file a joint letter informing the Court of their proposed discovery plan. (*See*

4

*ECF Minute Entry dated Apr. 17, 2025*.)  On April 25, 2025, the defendant filed a proposed plan for limited discovery.  (ECF No. 21.)  The same day, the plaintiff filed a letter stating that he would "go along with the use of affidavits/papers proposed by Defendant at this stage."  (ECF No. 22.)  On April 28, 2025, the Court accepted the parties' plan, directed them to exchange affidavits by May 30, 2025, and set a briefing schedule for the defendant to file a renewed motion to compel by June 27, 2025.  (*ECF Order dated Apr. 28, 2025*.)

On May 30, 2025, the defendant filed its motion to compel arbitration.  (ECF No. 24.)  On June 2, 2025, the defendant filed a letter certifying that AGI "timely provided a declaration concerning Plaintiff's job duties to [the plaintiff] via ECF," but that the plaintiff had not turned over any discovery.  (ECF No. 25.)  On July 25, 2025, the plaintiff filed his opposition to the motion to compel, attaching his declaration as an exhibit.  (*See* ECF Nos. 28, 28-1.)  On August 8, 2025, the defendant moved for discovery sanctions and reasonable expenses based on the plaintiff's failure to comply with the Court's discovery order.  (ECF No. 30.)

## LEGAL STANDARD

### I. Motion to Compel Arbitration

"The FAA has been interpreted as a 'federal policy favoring arbitration' and requiring federal courts to 'rigorously enforce agreements to arbitrate.'"  *Starke v. Squaretrade, Inc.*, No. 16-CV-7036, 2017 WL 3328236, at *5 (E.D.N.Y. Aug. 3, 2017) (quoting *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 521 (E.D.N.Y. 2017)), *aff'd*, 913 F.3d 279 (2d Cir. 2019).  This "policy in favor of arbitration is limited by the principle that arbitration is a matter of consent, not coercion.  Specifically, arbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit."  *Palmer v. Starbucks Corp.*, 735 F. Supp. 3d 407, 415 (S.D.N.Y. 2024) (quoting *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015) (alteration in original).

5

Under the FAA, "a party may move the district court for an order directing that arbitration proceed pursuant to the parties' written agreement." *Mumin*, 239 F. Supp. 3d at 521. In resolving a motion to compel arbitration, the Court considers: "(1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether the plaintiff's federal statutory claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221–22 (2d Cir. 2019) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)).

Courts adjudicating motions to compel arbitration generally apply "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). The moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law;" once the moving party has met its burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 394 (E.D.N.Y. 2013) (citations omitted). However, "the nonmoving party cannot survive summary judgment by casting mere 'metaphysical doubt' upon the evidence produced by the moving party" and "[s]ummary judgment is appropriate when the moving party can show that little or no evidence may be found in support of the nonmoving party's case." *Id.* (citations omitted). "On a motion for summary judgment, the court 'consider[s] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155

6

(2d Cir. 2002)). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

**II.     Motion for Sanctions**

Federal Rule of Civil Procedure 37 provides that if a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). These include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," *id.* 37(b)(2)(A)(i), and "striking pleadings in whole or in part," *id.* 37(b)(2)(A)(iii). "Once a court determines that sanctions are appropriate under Rule 37, the Court is generally obligated to order the disobedient party, its attorney, or both to pay 'the reasonable expenses, including attorney's fees, caused by the failure' to comply with a discovery order." *Aristidou v. Aviation Port Servs., LLC*, No. 18-CV-4040, 2021 WL 2471269, at *3 (E.D.N.Y. June 17, 2021) (quoting Fed. R. Civ. P. 37(b)(2)(C)).

A court deciding whether sanctions under Rule 37 are appropriate must consider: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (citation modified); *see also J.C. v. Zimmerman*, 150 F.4th 136, 146 (2d Cir. 2025). "The four *Agiwal* factors 'are not exclusive, and they need not each be resolved against' a party to warrant sanctions." *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 285 (S.D.N.Y. 2024) (quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)). A court has "wide discretion" in imposing discovery sanctions under Rule 37. *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007). However, "[t]here are two basic limitations upon a district court's discretion in imposing

7

sanctions pursuant to Rule 37(b)(2).  The rule expressly requires that the sanctions must be 'just'; and the sanction must relate to the particular claim to which the discovery order was addressed." *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991) (quoting Fed. R. Civ. P. 37(b)(2)).

## DISCUSSION

### I. Motion to Compel

#### a. Whether the Plaintiff is Exempt Under Section 1 of the FAA

The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  However, Section 1 of the FAA exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  This exemption covers maritime and railroad employees, as well as a "residual category" of classes of workers engaged in interstate commerce.  *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 343–44 (S.D.N.Y. 2021).  Employees within the Section 1 exemption "cannot be compelled to arbitrate under the FAA[.]" *Id.* at 343.

"[A] court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration."  *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019).  In *Southwest Airlines Co. v. Saxon*, the Supreme Court clarified that "any class of workers directly involved in transporting goods across state or international borders falls within [Section] 1's exemption."  596 U.S. 450, 457 (2022).  To determine whether a worker falls within the Section 1 exemption, the Court must first "defin[e] the relevant 'class of workers' to which [the plaintiff] belongs," and then "determine whether that class of workers is 'engaged in foreign or interstate commerce.'"  *Id.* at 455; *see also Bissonnette v. LePage Bakeries Park St., LLC*, 123 F.4th 103,

8

105–06 (2d Cir. 2024) (confirming that courts should apply the two-pronged test from *Saxon* when deciding whether a plaintiff falls within the Section 1 exemption).

First, the Court must define the class of workers to which the plaintiff belongs based on the "actual work that the members of the class, as a whole, typically carry out." *Saxon*, 596 U.S. at 456. It is undisputed that the plaintiff supervised the air cargo handling facility and the employees who inspected and unloaded cargo, and that he oversaw the operations of the air cargo handling facility. (*See* ECF No. 24-1 at 6–8; ECF No. 28 at 10–11.) Therefore, the plaintiff belongs to a class of workers who directly supervise air cargo handling and oversee operations at air cargo handling facilities.

Next, the Court considers "whether that class of workers is 'engaged in foreign or interstate commerce.'" *Saxon*, 596 U.S. at 455 (quoting 9 U.S.C. § 1). "[A]ny such worker must at least play a direct and 'necessary role in the free flow of goods' across borders." *Id.* at 458 (quoting *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001)). "[T]he relevant inquiry under Section One is not whether Plaintiff *himself* is engaged in interstate commerce, but whether he belongs to a 'class of workers' that is." *Islam*, 524 F. Supp. 3d at 349; *see also Bissonnette v. LePage Bakeries Park St., LLC*, 123 F.4th 103, 106 (2d Cir. 2024) ("[A] court must answer whether the defined class of workers is engaged in foreign or interstate commerce.") In *Saxon*, the Supreme Court held that "airline employees who physically load and unload cargo on and off planes traveling in interstate commerce" were exempt under Section 1, 596 U.S. at 457, but expressly declined to decide "whether supervision of cargo loading alone would suffice to exempt a class of workers under § 1," *id.* at 457 n.1 (citation modified). *Saxon* "teaches that the pivotal inquiry under Section 1 is whether the [workers] are 'far more removed from interstate commerce,' or instead perform 'activities within [its] flow.'" *Collazos v. Garda*

9

*CL Atl., Inc.*, 666 F. Supp. 3d 249, 264 (E.D.N.Y. 2023) (alteration in original) (quoting *Saxon*, 596 U.S. at 462).

As at least one court in this circuit has noted, "[s]ince *Saxon*, there appears to be little recent case law in which courts have determined whether supervisors over interstate commerce are 'transportation workers' for purposes of § 1." *Gabay v. Roadway Movers, Inc.*, 671 F. Supp. 3d 371, 384 (S.D.N.Y. 2023). In *Gabay*, the court held that a "manager of long-distance moving" who "directly supervised truck drivers who were moving customers' household goods long distances" fit within the Section 1 exemption. *See* 671 F. Supp. 3d at 383–87. In reaching this conclusion, the court relied on pre-*Saxon* cases which held that plaintiffs who were supervisors at trucking companies responsible for monitoring and improving drivers' performance and the company's operations fit within the Section 1 exemption. *See id.* at 384–85 (citing *Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir. 2004); *Zamora v. Swift Transp. Corp.*, No. 07-CA-400, 2008 WL 2369769 (W.D. Tex. June 3, 2008), *aff'd*, 319 F. App'x 333 (5th Cir. 2009)). And in *Amaya v. Menzies Aviation USA, Inc.*, the court found that certain workers at an aviation services company that provided ground handling, cargo handling, and fueling services to commercial airlines, including "Operations Agents," "Cargo Agents," "Cargo Office Leads," "Cargo Office Supervisors," "Cargo Screening Supervisors," "Load Masters," and "Operations Supervisors - Ground Handling," fell within the Section 1 exemption. No. 22-CV-5915, 2025 WL 947132 (C.D. Cal. Mar. 24, 2025).

By contrast, in *Schuler v. B & L Sys., LLC*, the court found that workers at a freight company who "did not personally transport or move goods and did not have authority to direct or manage those who transported goods" did not come within the Section 1 exemption. No. 24-CV-219, 2024 WL 4035986 (W.D. Mich. Sept. 4, 2024). Courts have also been unwilling to

10

hold that employees of transportation and logistics companies who perform clerical or administrative tasks are covered by the Section 1 exemption. *See, e.g.*, *Montes v. Capstone Logistics, LLC*, No. 24-CV-1485, 2025 WL 2505561 (E.D. Cal. Sept. 2, 2025) (finding that a clerk at a logistics company, whose job description included "providing administrative and clerical support; performing data entry; maintaining office files; preparing and making bank deposits; monitoring to assure paperwork is properly completed; organizing documents and preparing shipments to be sent to [the defendant employer's] corporate office; taking packages to FedEx 'as needed'; and receiving and distributing mail and packages" was not exempted under Section 1), *report and recommendation adopted*, No. 24-CV-1485, 2025 WL 2781283 (E.D. Cal. Sept. 29, 2025); *Villasenor v. Dollar Tree Distribution, Inc.*, No. CV 24-987, 2024 WL 4452853 (C.D. Cal. Aug. 6, 2024) (finding that the plaintiff, who worked in the front office of a distribution center and provided administrative support, was not exempted under Section 1); *Pasche v. Total Quality Logistics, LLC*, 749 F. Supp. 3d 1235 (M.D. Fla. 2024) (finding that the plaintiffs, who "perform[ed] logistical and administrative tasks such as gathering load information, inputting data into a database, coordinating with carriers, negotiating pricing, and overseeing the transportation process through 'check calls'" at a freight brokerage company were not exempted under Section 1).

      The parties dispute whether the plaintiff belongs to a class of workers engaged in interstate commerce. The defendant concedes that the plaintiff oversaw its operations at the cargo facility and supervised all the employees there. (First Tweeddale Decl. ¶¶ 11, 13, 15.) However, the defendant argues that the plaintiff's duties "comprised of management and general business operations of AGI's major operation at JFK Building 22, and he was not directly involved in placing goods across state or international borders." (ECF No. 24-1 at 12.)

11

The plaintiff says that the Section 1 exemption covers him, because he "could actually stop the cargo from continuing its journey in interstate and foreign commerce based on his inspection and application of . . . regulations and requirements." (ECF No. 28 at 10.) He asserts that once cargo was delivered to the defendant's warehouse to be shipped overseas, he "helped to verify the details of the cargo against the manifest" and "would also physically inspect the cargo to make sure it was on the manifest and to also make sure that it passed the checklist as to what is permissible under the company's rules, contracts with the airlines, the federal TSA, NY/NJ Port Authority, U.S. Customs, etc., as to weight, size, cargo type/content etc." (Pl. Decl. ¶ 10.) He states that "[b]ased on the required and necessary inspection, processing and requirements, [he] could decide whether or not to allow the cargo to continue on its interstate and foreign transportation journey." (*Id.*)  The plaintiff had a similar role for cargo that was imported to the U.S. (*Id.* ¶ 12.) He also claims he was responsible for completing documentation that was transmitted to the airlines electronically, and for communicating with airlines, shipping brokers, Port Authority, and TSA to "facilitate the interstate and foreign transport of the cargo and to resolve issues that arose." (*Id.* ¶ 13.)

According to the defendant, the plaintiff was not required to move, touch, or inspect cargo; it contends that "any alleged discretion that he had in placing cargo in and out of the stream of commerce was irregular and *de minimis*, if it occurred at all." (ECF No. 29 at 7–8.) The defendant focuses on whether the plaintiff himself moved, touched, or inspected cargo. However, the *Saxon* court "reject[ed] a narrow view of the exemption that would necessarily limit transportation workers to only those who 'physically move goods or people across foreign or international boundaries – pilots, ship crews, locomotive engineers, and the like . . . .'" *Gabay*, 671 F. Supp. 3d at 384 (quoting *Saxon*, 596 U.S. at 461). The plaintiff directly

12

supervised approximately 150 employees who physically processed and screened cargo, oversaw operations at the cargo handling facility, and ensured compliance with airport regulations and the defendant's contracts with airlines. (First Tweeddale Decl. ¶ 11, 13, 15, 16; Second Tweeddale Decl. ¶¶ 7–8; ECF No. 28 at 8; Pl. Decl. ¶ 14.) Therefore, even assuming the plaintiff did not personally handle, screen, or process cargo, he was critical to the operation of the cargo handling facility, making his work "so closely related to interstate and foreign commerce as to be in practical effect part of it." *Gabay*, 671 F. Supp. 3d at 385 (quoting *Palcko*, 372 F.3d at 593). Accordingly, despite the lack of binding precedential authority, it is likely that the plaintiff is within the class of interstate transportation workers exempt from the FAA, and the FAA does not compel arbitration of his claims. However, it is not necessary for the Court to decide this issue, because the plaintiff is compelled to arbitrate under state law.

### b.  Whether the Plaintiff is Compelled to Arbitrate under State Law

A court may apply state law to enforce an arbitration agreement even if a party is exempt under Section 1 of the FAA because "[t]he effect of the FAA's inapplicability, pursuant to Section 1, is merely to leave the arbitrability of disputes in the excluded categories as if the FAA had never been enacted." *Valdes v. Swift Transp. Co., Inc.*, 292 F. Supp. 2d 524, 529 (S.D.N.Y. 2003) (citation modified). The defendant argues that the plaintiff is compelled to arbitrate under New York law even if he is exempt under Section 1 of the FAA. (*See* ECF No. 24-1 at 12–13; ECF No. 29 at 8–9.)

The Arbitration Agreement provides in relevant part that "[t]his Agreement and any resulting arbitration award are enforceable under and subject to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ('FAA'), or, where the FAA does not apply, pursuant to the laws of the state where the Employee performed work for Employer." (ECF No. 24-3 at 3–4.) The parties do not dispute that the plaintiff performed work for the defendant in New York. (*See* First Tweeddale

13

Decl. ¶ 11; Pl. Decl. ¶ 5.)  Unlike the FAA, New York law does not have an exemption for transportation workers.  *Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 381 (E.D.N.Y. 2016) ("New York arbitration law does not exempt transportation workers from arbitration."); *see also Espinosa v. SNAP Logistics Corp.*, No. 17-CV-6383, 2018 WL 9563311, at *4 (S.D.N.Y. Apr. 3, 2018) ("A number of district courts in the Second Circuit have concluded that the FAA's exemption for transportation workers does not preclude enforcement of an arbitration provision in a transportation worker's contract under New York law.").  When deciding a motion to compel arbitration under New York law, the Court considers "(1) whether the parties made a valid agreement to arbitrate; (2) if so, whether the agreement has been complied with; and (3) whether the claim sought to be arbitrated would be time-barred if it were asserted in state court." *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-CV-8410, 2016 WL 5339552, at *9 (S.D.N.Y. Sept. 22, 2016).

      The plaintiff argues that the parties did not have a valid agreement to arbitrate because there was no "meeting of the minds."  (ECF No. 28 at 15).  The plaintiff claims that "the purported agreement does not even contain an electronic signature," (ECF No. 28 at 16), and that the Employee Handbook "clearly states that it and the terms and conditions (including any arbitration terms etc.,) are not a contract," (*id.* at 16–17).  The plaintiff does not deny that the electronic signature on the agreement is his.  *See Barrows v. Brinker Rest. Corp.*, 36 F.4th 45 (2d Cir. 2022) (holding that a former employee's sworn declaration unequivocally denying that she had electronically signed the arbitration agreement was sufficient to create a genuine issue of material fact and to preclude the employer's motion to compel arbitration).  However, he submits a version of the Arbitration Agreement without the signature page (*compare* Pl. Decl. at 8–12 *with* ECF No. 24-3), and says that there was no electronic signature on the agreement, (Pl. Decl.

14

¶ 4).  Omitting a page from the agreement does not create a factual dispute about whether the plaintiff entered into the Arbitration Agreement.  The plaintiff signed the Arbitration Agreement electronically on May 15, 2024.  (*See* ECF No. 24-3 at 7.)  The terms of the Arbitration Agreement provided that "all electronic signatures and acknowledgements are the legal equivalent of [the employee's] manual/handwritten signature."  (*Id.* at 6.)

The plaintiff also maintains that the employee handbook was not a contract, citing a portion of the handbook that reads "[t]he terms or conditions of this Agreement are not intended to and shall not create a contract of employment for a specific duration of time."  (ECF No. 28 at 17.)  This language merely confirmed the plaintiff's at-will employment status and had nothing to do with the arbitration agreement.  *See Sobel v. Major Energy Servs., LLC*, No. 19-CV-8290, 2020 WL 6561602, at *10 n.12 (S.D.N.Y. July 31, 2020) (concluding that an employment contract "specifically confirmed Plaintiff's 'at will' status" where it stated that "[t]his offer is not to be considered a contract guaranteeing employment for any specific duration or for any guaranteed term"), *report and recommendation adopted*, No. 19-CV-8290, 2020 WL 5362357 (S.D.N.Y. Sept. 8, 2020).  The Arbitration Agreement was clear: "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION, WHICH MAY BE ENFORCED BY EMPLOYEE, EMPLOYER, OR THE EMPLOYER ENTITIES."  (ECF No. 24-3 at 6.)[5]  In sum,

---

[5] The cases the plaintiff cites are not binding precedent and are in any event, distinguishable.  In *Lorenzo v. Prime Communications, L.P.*, there was no separate arbitration agreement.  *See* 806 F.3d 777, 782 (4th Cir. 2015).  The employee handbook provided that "no provision should be construed to create any bindery [sic] promises or contractual obligations between the Company and the employees" and "the information contained in the Handbook are guidelines only and are in no way to be interpreted as a contract."  *Id.*  Under these circumstances, the Fourth Circuit held that "[a]ny *implied* assent that might have been created by [the plaintiff's] receipt and review of the Handbook and by her continued employment was nullified by the *express* agreement of the parties not to be bound by any of the Handbook's terms."  *Id.*  Similarly, in *Morgan v. Raymours Furniture Co.*, there was no separate arbitration agreement because the plaintiff refused to sign one.  *See* 128 A.3d 1127 (N.J. Super. Ct. App. Div. 2016).

15

the parties entered into a valid agreement to arbitrate the plaintiff's FLSA and NYLL claims, satisfying the first prong of the *Zambrano* test. *See* 2016 WL 5339552, at *9.[6]

As to the second and third prongs, the plaintiff violated the Arbitration Agreement by filing this case. Moreover, the parties appear to agree that his claims are not time-barred. *See Espinosa*, 2018 WL 9563311, at *5. Accordingly, New York law compels arbitration of the plaintiff's claims.

## II. Motion for Sanctions

The defendant argues that Rule 37 sanctions are warranted because the plaintiff's declaration, which he filed on July 25, 2025, as an exhibit to his brief opposing the motion to compel, was "nearly two months overdue." (ECF No. 30 at 2.) The defendant asks the Court to designate the facts in Mr. Tweeddale's declaration as established, strike the plaintiff's declaration, and award the defendant reasonable expenses and attorney's fees. (ECF No. 30 at 1, 3.)

After careful consideration of the facts and the *Agiwal* factors, the Court concludes that sanctions are not appropriate. It is clear that the plaintiff's noncompliance was willful. "Noncompliance with a court's discovery order is willful when the order is clear, the party understood the order, and the failure to comply is not due to factors beyond the party's control." *Ramgoolie* v. *Ramgoolie*, 333 F.R.D. 30, 35 (S.D.N.Y. 2019). At the pre-motion

---

[6] The plaintiff also registers a general objection to arbitration agreements, claiming that mandatory arbitration violates the anti-retaliation provisions of the FLSA and NYLL because an employee cannot be terminated for "refusing to waive his FLSA and NYLL right to bring an action in Court." (ECF No. 28 at 21.) However, the plaintiff does not allege that he was terminated for refusing to agree to arbitrate. (*See* ECF No. 1.) To the extent he is arguing that he was coerced into signing the Arbitration Agreement as a condition of his employment or continued employment, "[t]he mere fact that an agreement to arbitrate was required as a condition of employment, or continued employment . . . is insufficient to invalidate the provision." *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003).

conference on April 17, 2025, the Court directed the parties to confer and devise a plan to exchange limited discovery on the plaintiff's job duties to determine if he was covered by the Section 1 exemption. (ECF No. 26 at 7–8.) The parties filed letters on the docket stating that they would exchange affidavits, a plan that the plaintiff agreed to "go along with." (ECF No. 22 at 2.) On April 28, 2025, the Court ordered the parties to exchange affidavits by May 30, 2025. (*ECF Order dated Apr. 28, 2025*.) The plaintiff did not comply with the order.

The plaintiff's claimed interpretation of the order was that "if the parties wanted additional information, they would request that information in writing and the other party would respond under affidavit/declaration format – similar to interrogatories," and that he "was not required to provide a declaration in these circumstances because Defendant had not propounded any questions, [and] an affidavit would have been very brief." (ECF No. 31 at 1–2.) The plaintiff also argues that "it seem[ed] that the entire reason for the Court raising limited discovery and leaving it up to the parties, no longer existed," because the defendant agreed at the pre-motion conference that its business operated in interstate commerce. (*Id.* at 2.) These excuses are unpersuasive. The Court entered the order after the pre-motion conference and it was clear that the parties were to exchange affidavits. The plaintiff also understood that he was required to exchange affidavits, as he expressed in a letter he filed on the docket.[7] Accordingly, this factor supports sanctions.

However, the other *Agiwal* factors weigh against imposing sanctions. A court assessing the second and fourth factors considers whether it has previously intervened in discovery disputes between the parties or has explicitly warned the non-compliant party that failure to

---

[7] The defendant objects that the plaintiff filed this letter on the defendant's letterhead and the defendant's signature was not authorized. (*See* ECF No. 23; ECF No. 30 at 1.) The plaintiff should have consulted the defendants before filing the letter, but the conduct does not warrant sanctions.

17

comply with the order may result in sanctions.  *See, e.g.*, *Capers v. BSREP UA 3333 Broadway LLC*, No. 24-CV-3892, 2025 WL 3300304, at *2–3 (S.D.N.Y. Oct. 14, 2025); *Aristidou*, 2021 WL 2471269, at *4.  The discovery dispute in this case was the first and only dispute, and the Court did not warn the plaintiff it would sanction him if he did not comply with the April 28, 2025 order.  Therefore, the second and fourth factors do not support sanctions.  As for the third factor — the duration of non-compliance — the plaintiff was about two months late in filing his affidavit.  The defendant claims that this "prejudice[d] [AGI's] ability to adequately investigate and respond to Plaintiff's claims within the short period of time provided to file its Reply." (ECF No. 30 at 2.)  Courts have found that sanctions are warranted when a party is non-compliant for at least three months.  *See Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 289 (S.D.N.Y. 2024) (collecting cases); *see also Aristidou*, 2021 WL 2471269, at *4 (noting that "[a] period of noncompliance as brief as a few months has been held to weigh in favor of dispositive sanctions" and collecting cases imposing sanctions on parties who failed to comply with discovery orders for three to four months.)  Therefore, the third *Agiwal* factor similarly does not weigh in favor of sanctions.[8]  Accordingly, the motion for sanctions is denied.

---

[8] The Court also considers the fact that the defendants moved to compel arbitration on the date the Court set for the parties to exchange affidavits, without taking any other steps to compel discovery before the deadline for the motion, which was almost a month later.

## CONCLUSION

For these reasons, the defendant's motion to compel arbitration is granted and the defendant's motion for sanctions is denied. The Clerk of Court is respectfully directed to stay this action pending arbitration. *See Espinosa*, 2018 WL 9563311, at *6 (S.D.N.Y. Apr. 3, 2018) ("Where a court finds [sic] compels arbitration pursuant to a written agreement, both the FAA and New York law mandate that the action be stayed pending arbitration.").

**SO ORDERED.**

                                                               s/Ann M. Donnelly

                                                     ANN M. DONNELLY
                                                     United States District Judge

Dated: Brooklyn, New York
        January 30, 2026